**UNITED STATES OF AMERICA**

**IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

MELVIN SMITH, an individual,

    Plaintiff,

-v-

WAYNE COUNTY COMMUNITY COLLEGE DISTRICT, a public authority.

    Defendants.

Case No.
Hon.

---

## COMPLAINT

Plaintiff Melvin Smith states as follows for his Complaint:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Melvin Smith ("Smith") is an individual who is domiciled in the State of Michigan.

2.      Defendant Wayne County Community College District ("WCCCD") was created and operates pursuant to the Community College Act of 1966, MCL 389.1 et seq, with six campuses located throughout the metropolitan Detroit area.

1

3.      This Court has personal jurisdiction over WCCCD because it is a political subdivision of the State of Michigan with its principal place of operation in the State of Michigan.

4.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1331 because the complaint raises claims under the Constitution and laws of the United States and has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

5.      Venue is proper in this Court under 28 U.S.C. §1391 because WCCCD resides in this district and a substantial part of the events and omissions giving rise to the claims occurred in this district.

## **GENERAL ALLEGATIONS**

6.      Smith was a student at WCCCD in the LPN [licensed practicing nurse] to RN [registered nurse] Bridge Program ("Bridge Program").

7.      The Bridge Program has rigorous requirements and expels any student from the program if the student fails two core courses, meaning RNB courses in the Bridge Program.[1]

8.      Smith dedicated himself to his studies and spent countless hours studying for his classes, while continuing to work.

---

[1] "RNB" is the three-letter code WCCCD provides for Bridge Program courses.

9.      Smith faced his share of challenges in the Bridge Program and failed Obstetrical Nursing.

10.     After this temporary setback, Smith redoubled his efforts, passed Obstetrical Nursing, and continued working through the Bridge Program.

11.     In the Spring 2025 semester, he enrolled in Transitions to Professional Nursing Practice.

12.     This class required Smith to use a computer program called NCLEX Pass Point.

13.     Throughout the semester, Smith experienced numerous technical difficulties with the program – he often could not access it all together.

14.     These technical difficulties outside of Smith's control negatively impacted his Transitions to Professional Nursing Practice grade.

15.     Students must have a cumulative score of 80% to pass the class.

16.     At the end of the semester, Smith had a cumulative score of 77%, just shy of the 80% threshold.

17.     WCCCD's student handbook allows students to appeal grades. **Exhibit A**, Pertinent Sections of the Student Handbook.

18.     In accordance with the appeal process, Smith first contacted his professor about his grade.  The professor declined to change it.

19.     Smith then filed an appeal, which WCCCD acknowledged receiving. **Exhibit B**, Appeal.

20.     Smith, met with Deans Shelia Collins and Benita Dade the week of May 29, 2025, and they presented Smith with a remediation plan. **Exhibit C**, Remediation Plan.

21.     The remediation plan required Smith to complete exams and perform clinical work. *Id.*

22.     Deans Collins and Dade told Smith to forgo his appeal because if he completed the remediation plan, he would pass Transitions to Professional Nursing Practice.

23.     Dean Collins and Smith then agreed on a completion date of September 30, 2025, and stated she would provide an updated copy of the remediation plan for Smith's signature when he was on campus. **Exhibit D**, Emails with Dean Collins.

24.     From the record, it appears that the revised remediation plan was never presented to Smith for his signature, even though the Parties' actions clearly demonstrate that the remediation plan was accepted and followed.

25.     Smith diligently adhered to the remediation plan and on August 21, 2025, informed Dean Dade that he completed all its requirements.

26.     As Smith worked on the remediation plan, Dean Collins retired and Dean Lois Theo was appointed.

27.     After Smith signed the graduation paperwork, Dean Theo informed Smith that she would not sign off on his graduation paperwork. **Exhibit E**, Dean Theo's email.

28.     In her email, Dean Theo acknowledged that Smith completed remediation, but stated that remediation was insufficient, despite Deans Collins and Dade's prior representations. *Id.*

29.     Smith appealed the decision and supplemented his original appeal narrative with a detailed description of the remediation plan and Smith's agreement with Deans Collins and Dade. **Exhibit F**, Supplemental Appeal Narrative.

30.     His appeal was denied, so he appealed to the Grade Appeal Committee.

31.     On October 31, 2025, the Grade Appeal Committee acknowledged receipt of the appeal and informed Smith that the Grade Appeal Committee would meet on November 7.

32.     Four days after the meeting, the Grade Appeal Committee denied Smith's appeal. **Exhibit G**, Appeal Denial Letter.

33.     Smith then appealed the decision to the Vice Chancellor of Educational Affairs. **Exhibit H**, Appeal to the Vice Chancellor of Educational Affairs.

34.     The appeal process states that the decision of the Vice Chancellor of Educational Affairs is "final." **Exhibit A**.

35.     On January 28, 2026, Provost Dr. Carolyn Custer informed Smith WCCCD would change his grade to 80% – a passing grade.

36.     Smith celebrated this achievement with his friends and family.

37.     On February 6, 2026, Dr. Custer stated it would take about a week for the grade change to take effect.

38.     Beginning February 24, 2026, Smith repeatedly asked when he could sign the graduation paperwork so he could sign up for the NCLEX exam.

39.     Then, on March 17, 2026, without warning, WCCCD claimed "[a] subsequent administrative review" decided Smith actually failed Transitions to Professional Nursing Practice and is kicked out of the Bridge Program. **Exhibit I**, March 17, 2026, letter.

40.     The appeal process does not include a "subsequent administrative review." **Exhibit A**. Additionally, WCCCD never informed Smith of this review.

41.     Rather, pursuant to the WCCCD grade appeal process, the appeal to the Vice Chancellor is the last step in the process and her decision is "final." *Id.*

42.     Because WCCCD rescinded Smith's passing grade and withheld his earned diploma – without a hearing and in violation of their appeal policy – Smith could not sit for the NCLEX.

**COUNT I**
**VIOLATION OF 42 U.S.C. §1983 FOR DEPRIVATION OF CIVIL RIGHTS**
**UNDER THE DUE PROCESS CLAUSE OF THE UNITED STATES**
**CONSTITUTION – PROCEDURAL DUE PROCESS**

6

43. Smith reasserts all prior allegations.

44. WCCCD acted under the color of state law with respect to the actions complained of.

45. The Fourteenth Amendment to the United States Constitution guarantees all citizens due process of law.

46. A property or liberty interest under the Fourteenth Amendment can be created by contract.

47. Here, WCCCD, through Deans Collins and Dade, entered into a contract with Smith that created a property interest in obtaining his Associates RN degree.

48. The agreement provided that if Smith completed the remediation plan, he would pass Transitions to Professional Nursing Practice and be eligible for graduation.

49. When WCCCD failed to uphold this agreement, Smtih appealed his grade.

50. WCCCD failed to follow their own appeal procedures.

51. After Dr. Custer adjusted Smith's grade and told him he would graduate, WCCCD conducted an "administrative review" and reversed Dr. Custer's decision.

52.    WCCCD's appeal procedures do not mention an administrative review post-appeal to the Vice Chancellor.

53.    Indeed, the appeal to the Vice Chancellor is "final," and cannot be appealed.

54.    WCCCD did not inform Smith of the administrative review or provide him with an opportunity to be heard.

55.    WCCCD's actions violate procedural due process under the Fourteenth Amendment and amount to a deliberate indifference to Smith's constitutional rights.

56.    Smith is entitled, by statute, to his costs and reasonable attorney fees.

WHEREFORE, Smith requests that the Court enter judgment in his favor under 42 U.S.C. §1983 against WCCCD finding that Smtih's procedural due process rights under the United States Constitution were denied and awarding Smith compensatory damages, costs, attorneys' fees, pre- and post-judgment interest, and such other relief as may be just under the circumstances.

## COUNT II
## VIOLATION OF 42 U.S.C. §1983 FOR DEPRIVATION OF CIVIL RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION – SUBSTANTIVE DUE PROCESS

57.    Smith reasserts all prior allegations.

58.    Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used.

59.     By arbitrarily reducing Smith's grade, they revoked his ability to graduate in a manner contrary to the processes established by WCCCD's policies, WCCCD engaged in conduct that shocks the conscience and interferes with Smith's constitutionally protected property rights.

60.     This egregious abuse of government power constitutes a substantive due process violation.

61.     Smith is entitled, by statute, to his costs and reasonable attorney fees.

WHEREFORE, Smith requests that the Court enter judgment in his favor under 42 U.S.C. §1983 against WCCCD finding that Smtih's procedural due process rights under the United States Constitution were denied and awarding Smith compensatory damages, costs, attorneys' fees, pre- and post-judgment interest, and such other relief as may be just under the circumstances.

## COUNT III
## BREACH OF CONTRACT

62.     Smith reasserts all prior allegations.

63.     Smith and WCCCD entered an agreement where WCCCD would give Smith his degree and allow him to graduate if Smith completed the remediation plan.

64.     Smith completed the remediation plan.

65.     Nevertheless, WCCCD refused to allow Smith to graduate or award him his degree, despite acknowledging that he completed the remediation plan.

9

66. WCCCD's breach caused Smith damages as he has been unable to receive his earned degree or take the NCLEX and become a licensed nurse and receive a nurse's salary.

WHEREFORE, Smith requests that the Court enter judgment in his favor against WCCCD finding that WCCCD breached its contract with Smith and awarding Smith compensatory and consequential damages, pre- and post-judgment interest, and such other relief as may be just under the circumstances.

## COUNT IV
## PROMISSORY ESTOPPEL

67. Smith reasserts all prior allegations.

68. WCCCD promised Smith that if he completed the remediation plan, he would pass Transitions to Professional Nursing Practice and, therefore, become eligible for graduation.

69. It was foreseeable that Smith would rely on this promise and complete the remediation plan.

70. Smith did rely on the promise and completed the remediation plan.

71. WCCCD then rescinded Smith's passing grade in Transitions to Professional Nursing Practice.

72. Injustice can only be avoided by enforcing WCCCD's promise to Smith and reinstating his passing grade in Transitions to Professional Nursing Practice.

10

WHEREFORE, Smith requests that the Court enter judgment in his favor against WCCCD finding that Smith reasonably relied on WCCCD's promise to his detriment and that injustice requires enforcement of WCCCD's promise, enforcing the promise, and awarding such other relief as may be just under the circumstances.

Respectfully submitted,

SCHENK & BRUETSCH, PLC

By:    /s/ Francis R. Doud, Jr.
Thomas P. Bruetsch (P57473)
Francis R. Doud, Jr. (P88731)
211 W. Fort St. Ste. 1410
Detroit, MI 48226
Thomas.Bruetsch@SBDetroit.com
Francis.Doud@SBDetroit.com

Dated: May 28, 2026                          Attorneys for Plaintiff